# Henderson and Bros., Inc., v. Call, Appellant.

*Contracts—Labor—Incompetent work—Case for jury.*

In an action to recover the value of labor furnished under an oral contract, it appeared that the plaintiff had agreed to supply skilled workmen to the defendant to assist him in fulfilling a contract. The defense advanced was that the workmen furnished were so incompetent that the defendant was discharged from his contract and suffered loss in consequence.

Under such circumstances, the case was for the jury. The burden was on the defendant to show that he lost his contract through the lack of skill on the part of the plaintiff's men and, upon failure to prove this, the verdict for the plaintiff will be sustained.

Argued October 22, 1924. Appeal, No. 86, Oct. T., 1924, by defendant, from judgment of C. P. No. 4, Phila. Co., June T., 1921, No. 1316, on verdict for the plaintiff in the case of Henderson and Bros., Inc., v. John A. Call. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

372, (1925).] Assignment of Error—Opinion of the Court.

Assumpsit on oral contract to furnish skilled laborers. Before AUDENRIED, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $2,346.89 and judgment thereon. Defendant appealed.

*Errors assigned* were the charge of the court, answers to points and refusal of defendant's motion for judgment non obstante veredicto.

*Francis J. Walsh,* and with him *Arthur C. Hirst,* for appellant.

*Joseph L. Ehrenreich,* for appellee.

OPINION BY HENDERSON, J., February 27, 1925:

The appellant entered into a contract with the United States Finishing Company, a corporation doing business in Norwich, Conn., for the erection of a flue in connection with the enlargement or reconstruction of the latter's plant. After entering on the performance of the contract, a difficulty arose because of the fact that he was employing non-union men to whom workmen on other parts of the reconstruction objected, as a result of which the appellant was requested by the architect in charge of the work to take away his men. This having been done, he applied to Henderson & Brother, a corporation in Philadelphia engaged in the same line of business, to help him out by sending union men with a foreman to work on his contract; whereupon an oral agreement was entered into between him and Henderson & Brother by the terms of which the latter company agreed to supply workmen to take the place of the non-union men withdrawn; the appellant to supply the material to be used in constructing the flue and to send it from his establishment in Philadelphia to Connecticut. This arrangement was not made under the direc-

tion of the Norwich company, but was wholly between the plaintiff and the defendant. The plaintiff had not inspected the premises at which the work was to be done, and according to the testimony of a member of the corporation had not seen the plan of the work to be done except as indicated by a rough sketch drawn on a sheet of manila paper. The defendant had however a blue print of the plan adopted by the architect of the reconstruction work. From the evidence it appears that the responsibility of Henderson & Brother was wholly to Call, the defendant, so far as contract liability was concerned, and that responsibility was to provide a sufficient number of union men capable of doing the work on the contract of Call with the United States Finishing Company. This the plaintiff alleged it had done; that the men sent did the work in a reasonably skillful manner with the material the appellant furnished; and it is for the compensation agreed upon between the plaintiff and defendant that this action was brought. The matter submitted for determination by the learned trial judge was whether the plaintiff sent men of reasonable skill who behaved themselves and did their work in a workmanlike way, in which case the plaintiff was entitled to recover, but if in any one of those particulars there was a substantial deviation from the terms and provisions of the contract, then the plaintiff should not be allowed to recover. The contract between the parties being in parol, it became necessary for the jury to ascertain what its obligations were and we do not understand from the argument of the appellant that there is any criticism of this submission of the case. The defense to the action was that the flue was not skillfully erected in accordance with the plan; that it was not level nor square; that this defect was due to the unskillfulness or negligence of the workmen and foreman furnished by the plaintiff and that because of these defects Call was ordered from the work and discharged from his contract with the Norwich company in accordance with the pro-

visions of that contract, with the result that he lost the profit of his bargain, which loss he presented as a counterclaim. In reply to this defense, the plaintiff undertook to show that any defect in the flue arose from defects in the plates furnished by Call; that they were defects in form and adjustment, as a result of which the flue when erected was a few inches out of line. This the foreman of the plaintiff attributed wholly to the defects in the plates, the principal difficulty with respect to which, as claimed by the plaintiff, was that the holes therein through which rivets were to be driven to keep the plates in place did not match; whereas the appellant claimed they were sufficiently accurate and did not prevent the proper construction of the flue. There was evidence that the plaintiff's foreman was intoxicated on one occasion, but that was said by the plaintiff to have been at night and that it in no way affected the work. It may be assumed from the evidence that he was somewhat arbitrary and combative, but no complaint was made on that account by the Norwich company or its superintending engineer. The court narrowed the controversy to a single issue in the following language: "The implication of the contract made between the defendant and the plaintiff was that the plaintiff would supply workmen of reasonable skill and would furnish a foreman who would know how to handle men in working on the job which they were expected to perform; also that the men who were sent would not only be skillful, but would display skill in the work that they did—skill to a reasonable degree. In other words, they must have done their work in a workmanlike way. Now, if workmen who answered that description were not supplied, the plaintiff ought not to recover anything. If workmen answering that description were supplied by the plaintiff to the defendant, then the defendant ought to pay what he agreed to pay for the plaintiff's services." An examination of the record convinces us that this covers the case as exhibited in the pleadings and evidence. The

whole issue was one of the skill of the plaintiff's workmen and the efficiency of their services. The contract of the defendant with the Norwich company was dated July 21, 1920, and obligated him to install the flue by the first day of the following September to the extent that it would then be ready for attachment to some boilers which it was proposed to use. The defendant's work was not completed at that time; the material to be used in the flue did not arrive on the ground until August 27th; he did not apply to the plaintiff for workmen until the 11th of October and the men were not sent until the 13th of that month. The defendant was in default therefore in the performance of his agreement. The plaintiff alleged that his discharge from the contract was not because of the failure of the former's workmen to properly complete the job, but because of the defendant's default in getting the work through in time. It was the burden of the plaintiff to show that it had carried out its agreement with the defendant. It was the burden of the defendant to establish a contrary state of facts, and in order to sustain his counterclaim, to convince the jury that he lost his contract because of the unskillfulness or negligence of the plaintiff's workmen. In connection with a reference in the charge to the failure of the defendant to perform his contract with the Norwich company in time, his counsel asked the court to instruct the jury that if the engineers of the Norwich company had not cancelled Call's contract for failure to have it performed on September 1st, an inference arose that the condition of the work up there interfered with Mr. Call's progress and that they had consented to his going ahead with the work at the time. This the court declined to do for the reason that it was an argument which might properly be addressed to the jury and this view of the request we consider a correct one. More than one inference might arise from the omission of the engineers of the Connecticut company to cancel Call's contract—his work might have been advanced to such a

stage as would induce them to believe it would be promptly performed, or the urgency of that company's enterprise might have led them to believe that it would be better to take a chance on the existing contract than to look for another contractor. The stipulation in the contract with reference to time warrants the inference that they wished to speed their reconstruction project. It clearly was not the duty of the court to suggest to the jury an inference not of law, which was purely specula- tive. It might perhaps have been urged by the appellant's counsel on the attention of the jury that they could conclude from the fact that Call was not promptly discharged from his contract on the first of September because of delay in completing the work that his failure was attributable to some outside cause, but in no view of the case was it the duty of the court to incorporate such a conclusion, in the charge. The first assignment is therefore overruled.

The second assignment is based on a misapprehension of the plaintiff's contract with Call as appears from the point presented. The court was asked to charge that it was the plaintiff's obligation "to erect a flue which substantially fulfilled the requirements of the blue prints." The point assumes that the plaintiff was a subcontractor under Call and that it was obligated to do the thing with reference to the flue which Call had undertaken to do. This view overlooks the fact that all of the material to be used was furnished by Call. The plaintiff had not seen the blue prints when its contract was made, and was in no wise responsible for the quality or condition of the plates to be provided by Call. All the plaintiff undertook to furnish was skilled labor and a foreman to direct the work, presumably under the supervision of the superintendent of the engineers who had charge of the construction. This appears not only from the evidence of the plaintiff, but from the statement of the defendant who said: "I made arrangements there for them (the plaintiff) to furnish me with labor to complete the

work." The plaintiff's responsibility therefore was to Call and not to the Norwich company with whom the latter was dealing.

The same thought is involved in the third assignment as expressed in the point presented which was refused by the court. It assumed that as the engineers of the Norwich company were not satisfied with the manner in which Call had executed his contract and therefore terminated his connection with the enterprise, that the plaintiff is bound by such action. We think it clear that the plaintiff was not a guarantor of the performance by Call of his contract with respect to the installing of the flue, and it is not contended that the plaintiff sustained any contract relation to the Norwich company.

By the fourth point the court was requested to charge that if the jury believed the defendant's witnesses, he was entitled to the amount of the counterclaim set up. That involved an assumption that the plaintiff had shown by his witnesses that he lost his contract because of the default of the plaintiff with respect to the quality of the work done by its men on the job, but the court refused to charge that there was such evidence, and an inspection of the record convinces us of the correctness of that action. There is no doubt that the defendant attributed his loss to the incompetency of the plaintiff's workmen, but no one responsible for the rescission of his contract says that was the reason he was not permitted to proceed further with his undertaking. The request for binding instructions could not have been properly given in any view of the evidence.

As the case was fully and clearly presented to the jury and the whole question of the credibility of the witnesses and terms of the contract between the plaintiff and defendant were submitted to the jury for inquiry and determination, we are unwilling to say that the court was in error in refusing to grant a new trial. No abuse of discretion is apparent, nor any convincing reason given why the case should be reheard,

The judgment is affirmed.